[No. 22581.  Department One.  December 29, 1930.]

GUARANTY TRUST COMPANY, *as Administrator, Appellant,* v. CONTINENTAL LIFE INSURANCE COMPANY, *Respondent.*[1]

*Thomas H. Wilson* and *Cheney & Hutcheson,* for appellant.

*Rigg, Brown & Halverson,* for respondent.

HOLCOMB, J.—On February 13, 1927, respondent, a stock company, issued to one Osborne Briscoe, in conjunction with a certain magazine, a travel and pedes-

[1]Reported in 294 Pac. 585.

trian accident policy for a nominal consideration of one dollar paid by the insured, effective for a term of twelve months from the date thereof, and providing for continuance in effect annually thereafter by re-subscribing to the magazine and for an increase in the amount insured with each renewal. On February 16, for the consideration then given, the policy was renewed for another period of one year.

The policy insured Briscoe against—

". . . death or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means and sustained by the insured in the manner following:

"Part One. By the wrecking or disablement of any railroad passenger car . . . in or on which the insured is traveling as a fare paying passenger" etc.

"Part Two. (A) By the wrecking or disablement of any private automobile, motor driven car or horse-drawn vehicle, in which the insured is riding or driving, or by being accidentally thrown from such automobile, car or vehicle."

Across the face of the policy in large red letters is printed, "This is a limited policy. Read carefully."

In December, 1928, Briscoe met his death through an accident, appellant was appointed as administrator of his estate, due proof of loss was made to respondent in accordance with the policy, payment was refused and this action was begun to recover $2,750.

The case was tried before the court and a jury, and the jury returned a verdict in favor of appellant for $2,750. Thereafter a motion for judgment n. o. v., or in the alternative for a new trial, was made, and the court granted the motion for judgment n. o. v. This appeal resulted. The facts are practically undisputed and show the following case made by appellant:

In the early part of December, 1928, deceased left

his ranch west of Wapato, to go to that town, traveling east on a road running east and west from Wapato. When about three miles from Wapato, a truck came by heavily laden with wood owned and driven by one Campbell, with whom was riding on the single seat of the truck a man named Holt. The truck was a Ford truck with a trailer attachment, two wheels attached to the rear of the truck, not as a separate trailer, but as a part of the same vehicle, thus making a six-wheel instead of a four-wheel truck. The body of the truck was one complete body.

Campbell was driving east on the same road on which deceased was walking, intending to go to his ranch situated about two miles in the direction of Wapato and one mile south of the road. When Campbell saw Briscoe walking along the road, he hailed Briscoe to give him a ride, and took Briscoe upon the truck. The truck had no cab, but simply a windshield, a front seat with a back rest and a low door on each side made of iron, the windshield being braced with steel or iron struts. On each side of the truck was a short running board, made of corrugated steel, about eight or ten inches wide and eighteen or twenty inches long, with a rough surface. Briscoe stood on the running board on the right hand side of the truck, and hung on to the struts, leaning forward so that his body was protected by the windshield from the cold wind. Campbell drove on toward Wapato, driving between twenty and twenty-five miles per hour. The road on which the truck was being driven is a wide, improved graveled highway, but it is unpaved and has no other hard surfacing, and during the months of October, November and December becomes quite rutty and full of chuck holes, due to the heavy hauling of agricultural products from the Yakima reservation to Wapato.

About two miles from where Briscoe got on the

truck, the road leading south, which Campbell intended to take, turned off from the highway on which he was driving at about right angles. Just before Campbell reached that place, he told Briscoe that he was not going into Wapato and would turn south, or to his right, at that corner, and when he was some distance from the corner, he started to stop, applying the brakes to slow down. Just as Campbell started to slow down and while braking his truck, from the momentum of the truck, the sudden slowing down and from the jar of the road, slightly "bumping" the truck, Briscoe was thrown backwards from the truck. As he fell backwards his left foot caught on some part of the truck, so that he was thrown under the rear wheel. The heavy arctic overshoes which Briscoe wore at the time, without other shoes, were cut and his big toe injured, showing a violent wrench. When he fell he sustained a severe blow on the head and then the back wheel ran over and across his chest. His chest and all the bones and organs in it were so severely crushed that the deputy coroner, who conducted the examination of him when taken to Wapato, found nothing more necessary to determine as to the cause of death than being run over and his chest crushed.

As the wheels passed over Briscoe, Campbell knew he had passed over something, and stopped his truck as soon as he could, some sixty feet from the corner where he intended to turn south. When he stepped out of the truck, Briscoe was lying in the road about ten feet behind the truck in a diagonal position, with his head to the northwest and his feet to the southeast. Besides the injuries to the chest, there were severe bruises and contusions to the back of the head which were not carefully examined because of the apparent injuries to the chest being sufficient to cause death.

On appeal, as stated by appellant, there are two

major questions to decide: (1) Did Briscoe meet his death directly, independently and exclusively of all other causes, from bodily injuries effected solely through external, violent and accidental means sustained by him from being thrown from the truck? (2) Was Briscoe, at the time he was thrown from the truck, within the provisions of the policy?

■■ It is obvious that the policy in suit is practically identical with the policy before us in *Wright v. Continental Life Insurance Co.*, 146 Wash. 665, 264 Pac. 410. We are not disposed to depart from the rule announced in that case that a limited accident policy against death occasioned by being accidentally "thrown from" an automobile, does not cover a death where the deceased, while riding in a truck, was killed when his head was struck by an upright of a bridge through which the truck was being driven, he not being thrown from the car. Nor do we disregard the rule announced in a similar case against the same insurer in *Lavender v. Continental Life Insurance Co.*, 143 Wash. 201, 253 Pac. 595, where we held that in such cases the act named in the policy and insured against must be established as the efficient cause of the death.

Respondent asserts, and the trial court agreed, that the above cited cases cannot be distinguished from this. We have no difficulty in distinguishing this case from both the cited cases. While the facts are not clearly stated in the *Lavender* case, it does appear in the opinion that, within the terms of the same form of insurance policy, the insured was not actually thrown from any motor or horse-drawn vehicle in which he was riding or driving, but in fact, fell from the vehicle while helping to unload a heavy motor. After he had fallen from the wagon to the ground, the motor fell on top of him and killed him. The vehicle had nothing

to do with the casualty. The *Wright* case, *supra,* is more easily distinguished. There, under a similar policy to that in suit, with a provision that, if death be occasioned "by being accidentally thrown from" an automobile, compensation would be paid, it was shown only that the insured, while a passenger in an auto truck, was killed by having his head come in contact with an upright of a bridge through which the motor truck was being driven, and that at all times the body of the insured was within the truck and never thrown from it.

In the present case, from the fact that the policy was issued to Briscoe, it must be presumed that he was insurable: in other words, he was of sound mind. It is not to be presumed that he would attempt to get off the truck when he knew it was to be stopped at the corner where the road turns south, a very short distance ahead of him. Neither is it to be presumed that he merely fell from the truck, unless there was some force such as the jar and bumping from inequalities in the road, together with the momentum of the car when being stopped, to cause the fall.

There is another principle applying to contracts of insurance to the effect that, if they are so drawn as to require interpretation and fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured; and will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms prepared by experts at the instance of the insurer, in the preparation of which the insured has no voice. *Algoe v. Pacific Mutual Life Ins. Co.,* 91 Wash. 324, 157 Pac. 993, *Fenton v. Poston,* 114 Wash. 217, 195 Pac. 31, *Thompson v. Brotherhood of*

*American Yeomen,* 130 Wash. 179, 226 Pac. 498, *Continental Life Insurance Co. v. Wells,* 38 Ga. 99, 142 S. E. 900, *Mathews v. Modern Woodmen of America,* 236 Mo. 326, 139 S. W. 151.

In accordance with the above principle, if decedent was not actually "thrown," that is, hurled, or tossed out of the car by some force, plain common sense dictates the inference that his fall backwards from the truck was caused by some force other than his own volition. The conclusion must therefore be reached that the death of Briscoe was caused by accident by being thrown from the auto truck in which he was then riding. This case is, therefore, somewhat analogous to our decisions in *Day v. Great Eastern Casualty Co.,* 104 Wash. 575, 177 Pac. 650, and *Rorabaugh v. Great Eastern Casualty Co.,* 117 Wash. 7, 200 Pac. 587.

It is contrary to just inference to say that, although Briscoe fell or was thrown from the truck, unless it was shown that he was killed before the automobile ran over his body, it was not shown that the efficient cause of his death was being thrown from the truck. When the death was shown to have been caused wholly by external, violent and accidental means and independently and exclusively of all other causes, even if striking on his head would not have caused death, when the truck immediately ran over his chest without the intervention of any other violent, external and accidental means, it was certainly a sufficient showing as to the cause of the death.

For a few cases somewhat analogous to this from outside jurisdictions, compare: *Travelers' Insurance Co. v. Murray,* 16 Colo. 296, 26 Pac. 774, *Continental Casualty Co. v. Colvin,* 77 Kan. 561, 95 Pac. 565, *Wright v. Aetna Life Insurance Co.,* 10 Fed. (2d) 281, Id., 17 Fed. (2d) 596, *Travelers' Insurance Co. v.*

*Melick,* 65 Fed. 178, *Baltimore & Ohio R. Co. v. McBride,* 36 Fed. (2d) 841.

■ Respondent also attaches some importance to the fact that, since Briscoe was riding on the running board and not inside of the truck, he was not within the terms of the policy. It could not be successfully contended that, had Briscoe been seated inside the truck, and when Campbell started to stop it to let him get out, had Briscoe then stepped out on the running board and immediately been thrown to the ground and killed, or so incapacitated that the truck instantly ran over him and killed him, he would not have been within the terms of the policy.

We are not seriously impressed with so technical a contention. Again the principle should apply that, if two or more constructions can be placed upon a single word such as "in," that construction should be adopted most favorable to the insured. The word "in" is ordinarily accepted and used as an equivalent to the word "on." 4 Words and Phrases, § 3464. *Andrews v. State,* 8 Ga. App. 700, 70 S. E. 111, *Depue v. Travelers' Insurance Co.,* 166 Fed. 183, *Aetna Life Insurance Co. v. Davis,* 191 Fed. 343, *Wilmarth v. Pacific Mutual Life Insurance Co.,* 168 Cal. 536, 143 Pac. 780, Ann. Cas. 1915B 1120; *Continental Life Insurance Co. v. Wilson,* 36 Ga. App. 540, 137 S. E. 403.

In the last cited case, based upon a similar contract of insurance with the one at bar, the insured was thrown from a log cart on which he was riding, which struck a stump in the road, throwing him out and dislodging a log which fell upon him. The court held that the insured was "within" the vehicle in the sense of the terms of the policy, reasonably construed.

We therefore conclude that the judgment n. o. v. and dismissing the action should not have been granted. The judgment is therefore reversed and remanded

with instructions to proceed further in accordance herewith.

MITCHELL, C. J., TOLMAN, PARKER, and MAIN, JJ., concur.