## Inter-Southern Life Insurance Company v. Foster.

(Decided March 24, 1933.)

WOODWARD, HAMILTON & HOBSON, OLDHAM CLARKE and RODMAN W. KEENON for appellant.

HENRY S. McGUIRE for appellee.

Opinion of the Court by Stanley, Commissioner —Reversing.

The policy issued to the appellee, William Foster, by the appellant, through and for a newspaper, insured him against accidental death or disability sustained "by the wrecking or disablement of any automobile or motor driven car* * * in which the insured is riding or driving or by being accidentally thrown from such wrecked or disabled automobile or vehicle." While the insured was driving his automobile in Lexington, with the window in the door open, his hand on the steering wheel, and his elbow protruding, a loading chute or gate swinging and extending from the body of a cattle truck, traveling in the opposite direction, struck his arm and tore it off. The left fender, door, and side of his automobile were slightly scraped and dented. The parking light was turned and the glass in it broken. The door was sprung a little and the corner of the cab was slightly mashed or broken. He lost control of his car when injured and it struck and was damaged some on the right side by contact with an electric pole. It was not otherwise damaged and could be freely operated by its own power and mechanism.

Upon a trial before the court alone, the appellee was adjudged. entitled to recover the stipulated indemnity, $1,250, for the loss of an arm. Appellant's position is that the accident was not within the purview of the policy and that judgment should have gone in its favor.

A complement of the fundamental canon of construction that a policy of insurance will be interpreted liberally in favor of the insured when there is any degree of ambiguity is the manifest rule that where the policy provides for indemnity for a loss which is the result of an injury sustained in a specified manner, the accident must be brought within the stipulation in order to recover. Walther v. Southern Surety Company, 187 Ky. 466, 219 S. W. 183. Especially should this be so where the premium is small ($1.25), and the policy is a very limited one and does not pretend to be full coverage. As an actuarial proposition, the insurance must necessarily be circumscribed and must have been so understood by the person insured. With all of the liberalities towards the insured, it must not be forgotten, as is said in Hawkeye Commercial Men's

Association v. Christy (C. C. A.) 294 F. 208, 213, 40 A. L. R. 46, that:

> "The parties to insurance contracts have the right and power to contract for what accidents and risks the companies shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them. * * * The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover."

The problem before us on the undisputed facts is whether the appellee sustained the loss of his arm in the manner specified in the policy, to wit, "by the wrecking or disablement" of the automobile in which he was riding. This is a multiple question. Was the car wrecked or disabled within the meaning of the provision? Was he injured by the wrecking or disablement? The term used in this policy was before us in Lutz's Adm'r v. Inter-Southern Life Insurance Company, 236 Ky. 339, 33 S. W. (2d) 20. It was held not ambiguous and was defined as an impairment in a less degree than a wreck, which implies a practical destruction. Applying that definition, it was held that a defective latch on an automobile door not produced by the same accident in which the insured was killed but which may have caused the door to come open and permitted the insured to fall out and sustain fatal injuries was not such a disablement. But in Inter-Southern Life Insurance Company v. Bowyer, 90 Ind. App. 494, 169 N. E. 65, it was held that the breaking of a chain supporting a tailgate of a truck upon which the insured was riding and letting him fall to the road was within the term authorizing recovery for his death under the second clause of the quoted provision of this policy providing indemnity if the insured be accidentally thrown from a disabled car. The case at bar does not come within that clause but is under the first clause covering injury sustained by the disablement of the car for he was not thrown out and did not fall out of the machine.

Rigorously interpreted the insuring clause would mean that if the force producing the accident happened to strike the person first and then disabled the

machine no recovery could be had, while there could be a recovery if the force chanced to strike the car first and then it injured him. No court, we are sure, would give that technical construction to the provision. We need not undertake here to construe the clause where the injury to the person and the disablement or wrecking of the automobile were practically simultaneous, or where there was a common disaster as regards the man and the machine and no separation could reasonably be made between the two results. But we do say there must have been some disablement of the automobile at the time and a causal relation of that impairment to the injury suffered by the insured. Lutz's Adm'r v. Inter-Southern Life Insurance Company, supra. Here there was but a trivial damage to the side of the car caused by the passing truck which struck the insured's protruding elbow. Afterward there was some damage to the car when he lost control of it by reason of the injury and the car ran off the road. Let it be assumed that there was a disablement of the machine within the meaning of the policy. The indemnified injury was not an effect of that specified cause, which may be said to be what is technically termed ''a causal relation.'' There must have been such a relationship or cause and effect, in order to authorize a recovery and we cannot perceive it here. The accident to the person was as independent of the scratching of the car as if the insured had been hurt by the throwing of a stone which never touched the car.

Such has been the construction put upon identical and similar insuring clauses.

In North American Accident Insurance Company v. West, 245 Ky. 316, 53 S. W. (2d) 692, 693, a similar clause was involved. An automobile which the insured was driving went over a precipice at the side of the road. His body was found in a pool of water some distance down the creek from the machine. The evidence was such as to permit only speculation or supposition as to the manner of his death, although it did appear from the condition of the automobile and the deceased's actions immediately following its leaving the highway that his death was not caused by it. A failure of proof that the death was the proximate result of the automobile going over the precipice required a finding for the insurance company as a matter of law.

The necessity of showing this causal relationship was held in Continental Insurance Company v. Malott, 89 Ind. App. 263, 166 N. E. 15, 17, where the policy was identical in terms to that here sued on. The insured drove his truck into a gas station and, while he was sitting in the machine and the tank was being filled, the gasoline ignited from a lantern in the car and burned the man to death and destroyed the automobile. In denying recovery on the policy, the court said:

"It was not * * * the wreck of the automobile that injured the insured."

A similar policy, issued through a newspaper, was construed in Gilbert v. Federal Life Insurance Company, 257 Mich. 205, 241 N. W. 150, 151. Indemnity was provided for loss of life suffered as the "direct consequence of the wrecking or disablement of any vehicle* * * in which the insured is riding, or resulting as a direct consequence of being thrown from such wrecked or disabled vehicle." The insured was on a farm wagon which had been stopped in a barn to be unloaded. It had permanent standards or stanchions at the front against which to pile the load. The horses started forward and this upright front of the wagon was broken by contact with the barn loft. The insured was thrown to the floor of the barn and killed. The breaking of the front end of the wagon was regarded as a disablement of the vehicle, and a minority of the court were of the opinion that the wagon was able to suddenly start and move forward by reason of the breaking of the standard (which, projecting up beyond the loft floor, should have held it), and caused the precipitation of the man to the floor. But a majority of the court were of the opinion—and it was so held—that it was the start of the horses that caused the man to fall and the breaking of the standard had nothing to do with the accident, and, since no causal relationship existed between the disablement of the wagon and the accident suffered by the insured, there was no liability under the policy.

In Inman v. Life & Casualty Insurance Company, 164 Tenn. 12, 45 S. W. (2d) 1073, 1074, the insured was riding on a load of furniture with his head projecting above the level of the load. His head was struck by the girder of a railroad overpass and he was knock-

ed from the truck and instantly killed. The applicable provision of his insurance policy was that he should have been injured "by the collision of or by any accident to any * * * automobile in which Insured is riding or driving." It was held there was no liability under the policy because he was "hurt by being hit while riding on the truck." It was said by the court:

"This construction would give rise to liability under circumstances wholly independent of the conditions plainly set forth in the policy. So long as the vehicle travels safely, no liability attaches under this contract. A distinction is drawn and must be given application between (1) an injury resulting from an accident to the vehicle, and (2) an injury resulting from an accident to the passenger independently of an accident to the vehicle."

The conclusion of fact stated in Slaughter v. Columbus Mutual Life Insurance Company (Iowa) 240 N. W. 229, 230, was that a wheel of a loaded gravel wagon which the insured was driving dropped into a chuck hole in the road causing him to be thrown on to the double-trees from which he fell to the ground and was run over by the wagon. After the horses had been stopped, it was discovered that a cleat on the side board which held the front end board in place was loose and that a wheel and the hounds of the wagon were damaged. The material insuring clause of the policy was to indemnify against death or disability sustained "by the wrecking or disablement of any private horsedrawn vehicle * * * in which the insured is riding or driving, or by being accidentally thrown from such wrecked or disabled vehicle." It was held that it was the dropping of the wagon into the hole in the road that caused the insured to fall and that the breaking of the cleat in the wagon bed had no causal relation to the accidental precipitation of the deceased to the ground, and recovery was denied.

Other cases construing similar or identical insuring clauses are Eynon v. Continental Life Insurance Company, 252 Mich, 279, 233 N. W. 228; Wright v. Continental Insurance Company, 146 Wash. 665, 264 P. 410; Maryland Casualty Company v. Edgar (C. C. A.) 203 F. 656; Kimbrough v. National Protective Insurance Ass'n, 225 Mo. App. 913, 35 S. W. (2d) 654,

655. There is another line of cases in which was involved insurance provisions for indemnity for death or disability as the result of the wrecking of a train or railway car in which the principal and construction we have been discussing was applied. See Speelman v. Iowa State Traveling Men's Association (C. C. A.) 4 F. (2d) 501; Wilson v. Travelers' Insurance Company, 183 Cal. 65, 190 P. 366; Lavender v. Continental Life Insurance Company, 143 Wash, 201, 253 P. 595; National Casualty Company v. Bogart, 125 Ohio St. 291, 181 N. E. 134.

It seems to us that the defendant is not liable under the policy, for the unfortunate loss of the plaintiff's arm was not under the conditions or circumstances prescribed.

Wherefore the judgment is reversed.

Whole court sitting.

Clay, Richardson, and Perry; JJ., dissenting.