The CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, one and the same as the Central National Insurance Group of Omaha, Plaintiff in Error,

v.

Pauline CAMPBELL, Defendant In Error.

No. 43349.

Supreme Court of Oklahoma.

Sept. 21, 1971.

Richard L. Wheatley, Jr., Vinita, for plaintiff in error.

Pitcher, Logan & Lowry, by William H. Castor, Vinita, for defendant in error.

BLACKBIRD, Justice.

Donald S. Campbell was insured in the amount of $1,000.00 against certain risks by a group insurance policy issued to members of The Automobile Club of Oklahoma City by plaintiff in error (hereinafter referred to as "defendant" or "insurer") when a large propane storage tank he was attempting to pick up with the crane mounted on the bed of his 2½-ton truck "overwhelmed" the truck, causing it to overturn and crushing Campbell to death. When the deceased insured's widow, the defendant in error, thereafter made claim for the $1,000.00, as the policy's beneficiary, the insurer refused payment, apparently on the ground that the injury, from which the insured died, was not covered by the policy, which, according to "PART 2" of its "Summary", restricted its coverage of injuries in automobiles, trucks, and some other conveyances, to those sustained

> "(a) By the wrecking of any lawfully registered and licensed passenger automobile or any automobile truck, *in which the Member is riding in as driver or passenger,* * * *,

and whose "EXCEPTIONS AND DEFINITIONS" portion contained the following paragraph:

> " 'RIDING IN' as used in Parts 1, 2, 3, 4, and 5 in this summary does not extend to nor cover the Member while *on the* steps, *platform*, or running board of any conveyance or vehicle." (All above emphasis added.)

Thereafter, defendant in error (hereinafter referred to as "plaintiff") instituted the present action against the insurer, as defendant, and, after a jury-waived trial upon stipulated facts, recovered judgment for $1,000.00, the principal sum prayed for. After the overruling of its motion for a new trial, defendant lodged the present appeal.

The pivotal question submitted for decision in this appeal is the one decided in plaintiff's favor by the above mentioned judgment. It may be stated thusly:

As, when the insured was fatally injured, he was operating a crane mounted on the bed of his truck, behind the truck's cab or seat, was he "riding in" the truck "as a driver or passenger" within the insurance policy's above quoted terms?

Because the particular task in which the insured was engaged, at the time of his injury, was the operation of the crane, while sitting on the seat attached thereto, defendant (in argument advanced under his first proposition for reversal of the trial court's judgment) contends that the "machine" the injured was operating "was not an automobile or automobile truck within the meaning of the policy." In support of its argument, defendant refers to the part of the insured's truck in which he was riding as its "platform", and points to such undisputed facts as the following: (1) The truck and crane were each operated by separate, unattached engines or motors, with separate and indepedent controls; (2) The truck is driven, or operated, from its cab; (3) The crane must be operated from the seat attached to it; (4) It is impossible for one person to operate both the truck motor and the crane motor at the same time; and (5) While the crane was being operated, the truck could not be moved, without releasing two jacks, located at the rear of the truck, that had been extended to the ground, and whose purpose was to bear the additional weight imposed by the crane's operations and prevent the truck from tipping during them.

Defendant urges application to this case of the theory on which the court in Bommarito v. North American Accident Ins. Co., 251 App.Div. 123, 295 N.Y.S. 624, reversed the judgment in that case, namely: Because of the way the insured's truck was being used at the time of his fatal injury, it had ceased to be a truck, and, because of its posture and use, was in no position to be used, or characterized, as a "means of conveyance."

Defendant's arguments under its brief's propositions numbered "2" and "3" are to the effect that since the insured, at the

time of his fatal injury, was not employed in any activity designed to cause his truck to move, or travel, he was not "riding in" it within the meaning of that expression as it appears in the above quoted "Summary's PART 2." Defendant suggests that it can be reasonably concluded that, by using this language, and the policy's above quoted definition of it as excluding coverage of a "Member while on the * * * platform * * * of any conveyance or vehicle," the parties to the insurance contract intended such an insured to be covered only while in the truck's seat, since that is the place its driver or passenger usually occupies and is a position "of little or no danger," where the risk is slight, while "the operation of the crane from the crane's seat is a position of exceeding danger, * * *".

On the other hand, apparently to support the hypothesis that a motor vehicle does not have to be moving, nor its driver have to be in its seat, for his injury to be covered by such a policy, plaintff cites Veillon v. Combined Insurance Company of America (La. App.), 166 So.2d 307, and Standard Life & Accident Insurance Co. v. Hardee (Tex. Civ.App.), 330 S.W.2d 544. In the Veillon case, a milk deliveryman, after stopping his truck in front of a customer's house, with the truck's motor idling, got up out of the driver's seat, took a step or two toward the truck's cooling compartment to get milk to carry to the customer's house, and was injured when, in the process of opening the cooling compartment's door, he struck his elbow on some hinges protruding from the door. According to the language of the policy involved there, it covered injuries "while actually driving or riding in any automobile, * * * or truck," and the policy contained the same words stamped across its face to indicate it was limited in its coverage, as does the Summary in this case. There, the court demonstrated the sophistry of considering the coverage of such a policy "clipped at both the starting and arriving end of a journey, so that on the one hand, it does not take effect until the car starts rolling, and on the other, it becomes ineffective the moment motion ceases, * * *"

(quoting Provident Life & Accident Ins. Co. v. Nitsch, 5 Cir., 123 F.2d 600, 603); and it concluded that in doing what he was doing when insured, the milk truck's driver "was 'driving or riding' in the truck within the meaning of the policies at the time of the accident."

The present case is distinguishable on its facts from the Bommarito case, supra, where the truck, whose rear end had been placed on a block, so that the truck's motor could be used to power a portable buzz saw through the medium of a leather belt connected with the truck's right rear wheel, had apparently been abandoned for use as a truck and "had been standing out in the field for some time * * *".

Here, it may be inferred from the undisputed facts that the lifting operation by Campbell's truck's crane, during which he was killed, was an integral and customary part of the truck's use as a commercial conveyance, and that its stop at the Cherokee Truck Stop at Big Cabin, to lift the propane storage tank, constituted only a temporary cessation of its forward motion, as was the milk truck's stop in the Veillon case, supra (though here it does not appear whether or not the truck's motor was running, or idling, during the hoisting operation).

The insurance policy in Standard Life & Accident Insurance Co. v. Hardee, supra, contained wording similar to the one in the Veillon case, but there the insured was injured while standing on his truck's bed, during an attempt to extricate its rear wheel from a stump hole. That case is authority for the proposition that an insured, if on his truck at the time of his injury, does not have to be "riding in" it, in the strictest meaning of that expression, in order for his injury to be covered by such a policy. While it does not appear that the policy in that case had a provision in it excluding "platform" from the scope of that expression's definition and application, and while the aforementioned suggestion in defendant's argument that the use of that expression ("riding in") shows

that the policy was intended to cover the insured's injuries *only* while he was in the truck's cab, seat, or portion constructed for, and ordinarily occupied by, people, finds a parallel in some of the statements of the court in Burrus v. Continental Life Ins. Co., 225 Mo.App. 1129, 40 S.W.2d 493, 495, (39 A.L.R.2d 956), in a majority of the cases we have examined, the fact that the insured's injury occurred on some part of the truck, other than its seat, has been no obstacle to recovery. See, for instance, Combined American Insurance Company v. Ganzer (Tex.Civ.App.), 350 S.W.2d 211, in which the deceased, when last seen alive, was in the cab of the crane mounted on the back of the truck involved, and the court said that this machinery did not transform the truck into something different; Inter Ocean Insurance Co. v. Norris, 205 Tenn. 217, 326 S.W.2d 437, in which the driver was injured when thrown off of his truck's running board; and Federal Union Life Ins. Co. v. Richey's Adm'x, 256 Ky. 262, 75 S.W.2d 767, in which the insured, and others, were riding upon boards placed across a truck's bed, and he was fatally injured when thrown therefrom by the impact of the truck's collision with a Studebaker sedan.

■ We reject the Bommarito case, supra, as inapposite to the present one, and hold that the fact that Campbell's truck was not moving at the time of his injury is insufficient basis for excluding said injury from the policy's coverage. We think our conclusion is dictated by the sound reasoning of the Veillon case, supra, and is compatible with the decisions reached in Madden v. Farm Bureau Mut. Auto Ins. Co., 82 Ohio App. 111, 79 N.E.2d 586, Wolf v. American Casualty Co., 2 Ill.App.2d 124, 118 N.E.2d 777, and other cases cited and discussed in the annotation at 39 A.L.R.2d 592, as well as those involving insurance covering ownership, maintenance, and use of trucks, wherein it has been held that their loading and unloading is as necessary a part of delivery trucks' use and purpose, as their being driven. In the latter connec-

tion, notice Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse, Okl., 268 P.2d 886, and Panhandle Steel Products Co. v. Fidelity Union Casualty Co. (Tex.Civ.App.), 23 S.W.2d 799, and other cases cited and discussed in the annotation at 89 A.L.R.2d 150, 171, 172.

■ Plaintiff's answer to defendant's contention that the insured's injury, while seated on the crane mounted on the bed of the truck, was excluded from coverage by the presence of the word "platform" in the hereinbefore quoted provision restricting the meaning of the expression "RIDING IN", is that the word is obviously intended to mean "steps" or "running board". We are not convinced of this, but, as there was no evidence or stipulation as to what part of a truck this word has reference, we can only conclude that it is ambiguous, as sought to be applied to the truck involved here. As the defendant was responsible for the drafting of the Summary, and as it would have been so easy in performing this task to have used words in it that would have definitely and unequivocally restricted the subject group policy's coverage to injuries to persons in the only seat on the truck that is in close proximity to its instrument panel, and to have excluded injuries sustained at any other point on the truck (see Federal Union Life Ins. Co. v. Richey's Adm'x, 75 S.W.2d 767, supra, at p. 768), we will follow the general rule of construing the policy's language most strongly against the insurer (Burrus v. Continental Life Ins. Co., supra) and hold that the presence of the word "platform" in the hereinbefore quoted portion of the Summary's "EXCEPTIONS AND DEFINITIONS" did not preclude plaintiff's recovery in this case. As said in the last cited case (40 S.W.2d at p. 495):

> "It is not unreasonable to require the insurance company to limit liability if it so desires, by language of unquestionable meaning."

In passing, we may say that we are aware of the case of Sparkman v. Highway Insurance Co. (U.S.D.C., W.D.La.), 266 F.Supp.

**1232**

197 (not cited by either of the parties), and we recognize that our conclusions in this case are not consistent with that decision, or some of the statements made therein, or some of the cases cited therein. That case, however, arose under circumstances different from those which brought about the present action, and involved insurance policies containing provisions different from those involved here.

In accord with the foregoing, we hold that the insured's fatal injury was within the coverage of the subject group insurance policy, and that the trial court was correct in so ruling and rendering judgment for plaintiff. Said judgment is therefore affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS and LAVENDER, JJ., concur.

JACKSON, IRWIN, HODGES and McINERNEY, JJ., dissent.